## NAYLOR, COUNTY TREASURER, v. CRABBE et al., BOARD OF COUNTY COM.'RS.

### No. 2792.   Decided April 24, 1915 (148 Pac. 359).

1. STATUTES—TITLE—SUFFICIENCY.  The title of Laws 1913, chap. 105, entitled "An act permitting any public officer having public funds in his custody to deposit same in banks;  *  *  *  requiring the collection of interest and security from depository banks," is sufficient within Const., art. 6, section 23, providing that no bill containing more than one subject, clearly expressed in the title, shall be passed, to justify provisions authorizing the deposit of public funds in banks at interest, and providing that the cost of any official bonds required by any public treasurer shall be paid out of funds in the respective treasury provided the interest received shall be placed in the general fund, though construed to require payment of interest into the general fund before cost of an official bond may be paid out of the funds in the treasury.   (Page —.)

2. COUNTIES—COUNTY TREASURER—OFFICIAL BONDS—PAYMENT OF COST—STATUTORY PROVISIONS.  Under Laws 1913, Chap. 105, authorizing the deposit of public funds in banks at interest, and declaring that the cost of any official bond furnished by any public treasurer shall be paid out of the funds, provided that interest received shall be placed in the general fund, county commissioners are required to cause to be paid the premium of the official bond of a county treasurer out of funds in the treasury to the amount of interest collected by the official on public funds deposited in banks at interest and placed by him in the general fund, but the commissioners may not direct payment of the premium until the amount of interest has been collected and placed in the general fund by the official. (Page —.)

Original application for mandamus by Raymond C. Naylor, as Treasurer of Salt Lake City, against A. H. Crabbe and others, as members of and comprising the Board of County Commissioners of Salt Lake County.

PROCEEDINGS DISMISSED.

*J. W. Thompson* and *Booth, Lee, Badger & Rich,* for plaintiff.

*H. L. Mulliner,* County Attorney, for defendants.

618        SUPREME COURT OF UTAH.        [April

Naylor, Co. Treas., v. Crabbe et al., Bd. of Co. Com'rs, 45 Utah 617.

STRAUP, C. J.

A demand has been made on the County Commissioners of
Salt Lake County to pay, or to direct to be paid, out of funds
of the county treasury, the cost or premium of the official
bond of the County Treasurer. It is alleged that the official
bond as fixed by law and required to be given by the Treas-
urer, and approved by the County Commissioners, is in the
sum of $1,686,100, and that the annual cost or premium of
the bond is $4,265. They refused. We, on application for
a writ of mandate, are asked to direct them to so pay it.

We have a statute (chapter 105, Laws Utah 1913) which
reads:

"Any public officer having public funds in his custody
may deposit the same, or any part thereof, with any bank
incorporated under the National Banking Act and doing busi-
ness in this state, or with any bank or trust company incor-
porated under the laws of and engaged in business in this
state: Provided, that he requires such depository to pay
interest on all funds so deposited at a rate of not less than
two per centum (2%) per annum, and that he take from such
depository collateral security or a good and sufficient surety
company bond or a personal bond approved by him and suffi-
cient in amount to fully protect such funds: Provided, that
the cost of any official bonds required to be furnished by any
public Treasurer shall be paid out of funds in the respective
treasurers [treasuries]: Provided, that the interest received
under the provisions of this act  *  *  *  shall be placed in
the general fund."

It is averred that the funds coming into the hands of the
County Treasurer have been deposited with a bank as in the
act provided, and that "interest will be paid upon said funds
so deposited at the rate of 2 per cent. per annum, provided
the premium of said bond is paid out of public moneys," that
the annual interest on the deposits will be about $8,000, and
that the interest for the first quarter, or for the months of
January, February and March, 1915, amounts to the sum of
$833, which, it is averred, "may now be available," but it is
not averred that it or any sum has been "placed in the gen-
eral fund," or that it even has been collected. In other

respects the conditions enumerated in the statute to bring the case within the proviso requiring the cost or premium of official bonds to be paid out of funds in the treasury are alleged to have been complied with.

The petition for the writ is demurred to. The point raised by the demurrer is the validity of the act. That portion requiring the payment of the cost of the official bonds is claimed to be invalid on the ground that it is not sufficiently "expressed in the title" of the act, and as required by article 6, section 23, of the Constitution. The title of the act is:

"An act permitting any public officer having public funds in his custody to deposit same in banks within the state; requiring the collection of interest and security from depository banks."

That, it is contended, does not express or indicate anything in respect of the payment of costs or premiums of official bonds, or the payment of them out of funds of the treasury, and thus it is contended that no such subject is expressed or indicated in the title.

The question is not free from doubt. There is much to support the contention made. The statute, to say the least, is peculiar and confusing. It is with reluctance, however, that courts declare acts unconstitutional, especially on the ground that the subejct is not sufficiently expressed or indicated in the title. If the act means that the Commissioners, or other authorities of the county, are, in all events, required to pay, or cause to be paid, the cost or premium of official bonds out of funds of the county treasury or otherwise, then do we think that such a subject is not or fairly sufficiently expressed or indicated in the title. But we do not think it means that. Fairly considered, we think it means that a public official may deposit public funds with a bank or trust company. It is not now necessary to consider whether the word "may" in the statute is directory or mandatory. Considering it directory, if the official does that, he then shall exact interest at the rate of not less than two per cent. per annum. It is noticed that the act does not, at least not in express terms, require him to pay such interest into the gen-

eral fund, or otherwise to account for it, except as may be implied from the language that if the funds are deposited he shall require the depository to pay interest at a rate not less than two per cent. per annum. Then comes the proviso that the cost of his official bond shall be paid out of the funds in the treasury, conditioned, however, that the interest received by him shall have been placed in the general fund. The subject of the act as indicated and expressed in the title relates clearly enough to the subject of depositing public funds and the collection of interest thereon. Whatever conditions may be imposed as to that, of course, may be expressed in the act itself. If the payment of the official bond is conditioned upon, or relates to, the subject of interest and the collection of it, then is such payment germane thereto, and hence germane to the subject expressed in the title. We think the payment is so conditioned and that the cost of official bonds shall be paid out of funds of the treasury only in the event that public funds are deposited, interest collected thereon by the official, and placed by him in the general fund. The act as worded is but another way of saying that the cost or premium of the official bond shall be paid out of interest collected by the official on public funds, if he places such interest in the general fund. That is what we think the act means. If it does not mean that, it is hard to conceive that it means anything.

With that meaning, we think that portion of the act claimed to be invalid is germane to the subject expressed in the title, and therefore valid. Thus the conclusion that the County Commissioners are required to pay, or to cause **2** to be paid, the cost or premium of the official bond out of funds in the treasury to the extent or amount of interest collected by the official on public funds and placed by him in the general fund. It also follows that the Commissioners cannot be directed to pay the full amount of the cost or premium of the official bond until that amount of interest has been collected and placed in the general fund by the official. They, of course, can pay such part of the cost or premium as is equal to the amount of interest collected and placed in the general fund, but cannot be directed to pay the

whole of it, until such an amount of interest shall have been collected and placed in the general fund by the official.

Upon the averments it follows that the County Commissioners cannot now be directed to pay the whole of the premium or cost of the official bond, nor now be directed to pay any part thereof, because it is not averred that any interest has as yet been collected or paid, or that any has as yet been "placed in the general fund" by the County Treasurer. Because of a want of such averments we think the demurrer should be sustained, and, unless leave to amend is asked the proceedings will be dismissed.

Such is the order.

FRICK and McCARTY, JJ., concur.