Gabrielli, J.
The Westchester County Grand Jury charged defendant with grand larceny, second degree for theft of an automobile, and with criminal possession of burglary tools and a hypodermic instrument which were found with defendant in the automobile. Defendant was found guilty after a jury trial on all charges except that the larceny count was reduced to the third degree by the jury pursuant, evidently, to the charge concerning the monetary worth of the vehicle. The Appellate Division has unanimously affirmed the convictions. The point raised on this appeal with which we are chiefly concerned is whether it was error for the Judge to charge the jury that they might find a completed larceny even though they found defendant to have started the car, but not to have moved it. A subsidiary and related issue is whether this Judge erred in refusing to charge attempted larceny.
*455 The People’s case insofar as it relates to the larcenous act was proved through the two police officers who made the arrest. Officer Davis testified that at approximately 1:00 a.m. on December 14, 1971 in the Town of Greenburgh he and fellow Officer Downey were cruising and spotted defendant in an automobile near the curb; that they felt the situation warranted a routine check whereupon the police cruiser was parked alongside the subject car to block its exit from the curb. Defendant, who was behind the wheel, was unable to produce a proper registration. Upon ascertainment that the true owner of the car was Stephen Solomon, a nearby resident, defendant was placed under arrest. The burgler tools and hypodermic needle were found in the car with defendant.
Officer Davis testified that1 ‘ we noticed a vehicle on the right-hand side, in a curb lane, with its headlights on, the motor running, and a person operating this vehicle. The wheels were cut to the left and the vehicle was inching out into the roadway.” Officer Downey rendered approximately the same account of these events and stated: “As we approached the intersection of Hillside Avenue and Virginia Road, we noticed a vehicle to our right parked facing north with the engine running with the lights on just starting to pull out of a parking space.” There was additional evidence that the side vent window of the car had been forced. The only inroad which was made on the evidence that the car was in motion was Officer Davis’ Grand Jury testimony that when he saw the car it was “ parked ” at the curb. The defense produced no witnesses and introduced no proof.
The Judge instructed the jury on the larceny count reading to them subdivision 1 of section 155.05 of the Penal Law, i.e., that larceny consists of the wrongful taking, obtaining or withholding of property. He also told them that if they found that defendant had forced the window, removed' the ignition switch, started the automobile and exercised control over the automobile by any act, then they could find him guilty of larceny. After some deliberation the jury returned for further instruction on the meaning of control and whether movement of the vehicle was required to effectuate control. The Judge answered as follows:
*456 “ control would be a proprietary act, any act which constituted appropriating the automobile to the defendant’s own use, exercising some degree of jurisdiction over the automobile, taking an affirmative act. In this case, the entering of the car, the closing of the door, turning the lights on, and starting the vehicle may be considered acts of control.
“ You have asked further the question: ‘ Does control require movement of the vehicle 1 ’ I would say to you that control in the sense as creating a larceny and as I included in my original charge charge would not require movement of the vehicle.”
Although defendant argues that it was error for the Judge not to allow the jury to find an attempt this is welded to the argument that there can be no completed larceny until the vehicle is moved by the would-be thief. The argument has to be that not only was it error not to charge attempt, but that it was error to tell the jury they could find a completed larceny even though they might find the vehicle not to have been moved.
All the testimonial evidence on the point was that the car was beginning to move out from the curb after the officers spotted it. There is no affirmative proof that the car was not moving. Officer Davis’ prior statement that the car was “ parked ” may to some small degree have affected his credibility on the question of the movement of the ear, however. It may be argued that the jury may have doubted the officers’ testimony on this matter and this theory is supported by the fact they asked for more specific instructions as to what they should do depending on whether the car was moved. We have only recently and exhaustively reviewed the rules concerning when the charge of attempt is appropriate and concluded that despite the language in the definition of attempt in the new Penal Law (§ 110.00) which no longer requires a failure to effect the commission of the crime, the attempt charge is inappropriate where no view of the evidence would support the charge or where, citing People v. Mussenden (308 N. Y. 558, 563), 11 * the evidence essential to support a verdict of guilt of [the lesser crime] necessarily proves the guilt of the greater crime as well. ’ ” (People v. Richette, 33 N Y 2d 42, 47). If it be assumed for the sake of argument on this point that a trespass short of moving the car could only amount to an attempted larceny, then the Judge erred *457 in refusing to charge attempt because the jury might have taken a view of the evidence to the effect the car was not moved.
We cannot, however, stop on that observation and modify or remand. The Judge not only refused to charge attempt; he told the jury that there could be a completed larceny without movement of the car. We must, therefore, also deal with the question whether that was a correct instruction.
It is woven into the fabric of the common law that asportation is an element of a completed larceny. (Commonwealth v. Sanders, 225 Pa. Super. 432; People v. White, 71 Cal. App. 2d 524; State v. Maddaus, 137 Minn. 249.) Indeed, these cases . involve automobiles, the courts searching for the asportation element in all three. There does not appear to be, however, any authority including those cases just cited and including the two cases advanced by defendant (Matter of Slattery [Domestic Relations Ct.], 14 A D 2d 805; Matter of Meyers, 43 Misc 2d 170), which approximates the facts in the instant case, i.e., where an automobile is entered, where the culprit positions himself behind the wheel, starts the engine, turns on the lights and starts to move the car or is about to do so. (See, also, Commonwealth v. Kozlowsky, 238 Mass. 379; State v. Olson, 59 Utah 549.)
The authoritative case in this jurisdiction on the essential elements of larceny is Harrison v. People (50 N. Y. 518). There a pickpocket grasped the victim’s wallet and lifted it no more than several inches and not all the way out of the pocket when the victim, having become aware, grabbed at the wallet and thrust it back down to the bottom of the pocket. The court held that a completed larceny had been committed. The temporary possession by the thief, even though for a moment, was sufficient as was the slight movement accompanying the possession. While it is to be conceded that the element of movement was a consideration in the court’s reasoning, critical analysis of that reasoning discloses that the elements of possession and control were the paramount elements sought and that the fact of movement merely tended to support the idea of control. Thus, it was stated (p. 523): “ To constitute the offence of larceny, there must be a taking or severance of the goods from the possession of the owner. * * * But possession, so far as this offense is concerned, is the having or holding or detention of property in one’s *458 power or command.” (Emphasis added.) There ensued discussion concerning instances where the object of the theft was connected to the owner by a string or chain and where, therefore, there could be no completed larceny because of the continued connection to the owner even though there was limited asportation. It was then stated (p. 524) concerning the wallet: ‘ ‘ It was in his possession. He directed, and, for the instant of time, controlled its movements.”
The actions needed to gain possession and control over a wallet, including movement of the wallet which, in itself, is merely an element tending to show possession and control, are not necessarily the actions needed to gain possession and control of any automobile. A wallet, or a diamond ring, or a safe are totally inert objects susceptible of movement only by physical lifting or shoving by the thief. An automobile, however, is itself an instrument of transportation and when activated comes within the total possession and control of the operator. In this situation movement or motion is not essential to control. Absent any evidence that the vehicle is somehow fastened or immovable because of a mechanical defect, the thief has taken command of the object of the larceny. He has, in the words of subdivision 1 of section 155.05 of the Penal Law, wrongfully “ taken ” the property from its owner surely as much so as had the thief in Harrison.
Consistency is always desirable in the application of the various laws and such would not be achieved were we to hold that on these facts defendant had not gained possession and control of the car. An established line of authority in New York and elsewhere holds that for purposes, of offenses for driving while intoxicated under the Vehicle and Traffic Law, operation of the vehicle is established on proof that the defendant was merely behind the wheel with the engine running without need for proof that defendant was observed driving the car, i.e., operating it so as to put it in motion. (People v. Marriott, 37 A D 2d 868; Matter of Tomasello v. Tofany, 32 A D 2d 962, stay den. 25 N Y 2d 647, mot. for lv. to app. den. 25 N Y 2d 742; Matter of Prudhomme v. Hults, 27 A D 2d 234 and cases cited therein; People v. Ceschini, 63 Misc 2d 15; Ann., 47 ALR 2d 570, Driving While Drunk, and suppl.) Quoted with approval in Prudhomme was the language from People v. Domagala (123 Misc. *459 757, 758) that an individual “ began to violate the law [against operating while intoxicated] the instant he began to manipulate the machinery of the motor for the purpose of putting the automobile into motion ’ ’, even though he did not succeed in moving it. (27 A D 2d, at p. 236.) Also quoted approvingly was this language from Commonwealth v. Uski (263 Mass. 22, 24): “ A person operates a motor vehicle within the meaning of [the statute] when, in the vehicle, he intentionally does any act or makes use of any mechanical or electrical agency which alone or in sequence will set in motion the motive power of that vehicle.” (27 A D 2d, at p. 237.)
It would be difficult to understand how a person who is operating a car, as defendant was under the authority just discussed, could be said nevertheless not to be in possession and control of that car. It is further to be noted that where the Legislature has specifically addressed itself solely to automobile taking, a person is guilty of unauthorized use where he “ takes, operates, exercises control over, rides in or otherwise uses a vehicle. ” (Penal Law, § 165.05, subd. 1; emphasis added.) Although it might be argued that the unauthorized use statute is not a larceny statute and thus utilizes lesser criteria, the distinction meant by the Legislature between the two kinds of offenses lies in the intent of the taker, not in the means used to effect the taking. Thus, the unauthorized use statute contemplates only a borrowing and not a complete appropriation. (Denzer and McQuillan, Commentary, McKinney’s Cons. Laws of N. Y., Book 39, Penal Law, § 165.05.) If operation of the automobile can effect a taking under the unauthorized use statute then operation ought also to suffice under the larceny statute.
Finally, we do not, as stated in the dissent, “ disregard ” the relative constancy of the statute under which defendant was convicted. It is to be noted that not since 1942 have we in this jurisdiction been strictly bound to the ancient common-law concepts of larceny. (Denver and McQuillan, Commentary, McKinney’s Cons. Laws of N. Y., Book 39, Penal Law, § 155.05.) At that time the first unnumbered paragraph of former section 1290 was enacted. That was the forerunner of current subdivision 1 of section 155.05 of the Penal Law which was charged to the jury in the instant case and which in very broad terms prohibits wrongful appropriation, taking, obtaining or withhold *460 ing of another’s property with the requisite intent. There is nothing in the definitions section which states that asportation is in all cases an essential element of such taking or obtaining (§ 155.00). Subdivision 2 of section 155.00 defines “Obtain ” as follows: “ ‘ Obtain ’ includes, but is not limited to, the bringing about of a transfer or purported transfer of property or of a legal interest therein, whether to the obtainer or another.” Surely a person transfers an instrument of transportation to himself when he commences to operate the instrument for its intended purpose. At that point it comes under his sole dominion and control and, assuming requisite intent, amounts to the completed taking as envisioned under our broadened statutory concepts. To require that the vehicle be moved by the operator is to slavishly adhere to the auxiliary common-law element of asportation which is simply not necessary to the finding of the primary elements of dominion and control where an activated automobile is concerned.
Defendant’s other points are too insubstantial to require discussion. The order appealed from should be affirmed.